IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS ORTIZ PAGAN, | : Civil No. 1:25-CV-691 |
| | : |
| Plaintiff, | : |
| | : |
| | : (Judge Munley) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| BROOK KELLY, et al.,[1] | : |
| | : |
| Defendants. | : |

### REPORT AND RECOMMENDATION

I. Introduction

This case comes before us for a screening review of the prisoner-plaintiff's *pro se* amended complaint. The plaintiff, Carlos Ortiz Pagan, is an inmate incarcerated in the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Houtzdale ("SCI Houtzdale"). He brought his initial complaint against Megan's Law, alleging that as a convicted sex offender, his lifetime registration requirement violated his constitutional rights. (*See* Doc. 1). As we noted in our prior Report and Recommendation, a review of Pagan's state court criminal docket indicates that in October of 2021, Pagan pleaded guilty

---

[1] The plaintiff has named new defendants in his amended complaint, and we have adjusted the caption of this matter accordingly.

to eight felony counts involving sexual abuse of a minor and was sentenced to seven to fourteen years' imprisonment. *See Commonwealth v. Ortiz-Pagan*, No. CP-22-CR-0000911-2020.[2]  He recently filed a petition for writ of habeas corpus in this court, alleging his guilty plea was involuntary, and his counsel was ineffective. *Pagan v. Close, et al.*, Civ. No. 1:25-CV-682.

Along with the complaint, Pagan filed a motion for leave to proceed *in forma pauperis*. (Doc. 2).  We granted the motion for leave to proceed *in forma pauperis* for screening purposes only but after consideration, we recommended that the complaint be dismissed. (Doc. 8).  The district court adopted our recommendation, noting that Pagan filed a letter requesting leave to bring new claims against new defendants. (Docs. 12-14).  Pagan then filed an amended complaint on July 8, 2025. (Doc. 16).

Pagan's amended complaint asserts claims against SCI Houtzdale staff arising out of his incarceration. (Doc. 16).  Pagan claims that as a sex offender, he is required to participate in certain programming in the

---

[2] We may take judicial notice of the public docket in Pagan's underlying state criminal case. *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

prison, which he refused because he claims he is innocent and is fighting the criminal charges to which he pled guilty. (*Id.* at 2-3). However, after realizing he would be denied parole if he did not complete the program, Pagan asked to be designated as "not (sic) longer refusing the (SOP)." (*Id.* at 3). He claims that several days later, Unit Manager Kelly asked him about a grievance and informed him that he could not participate in the program if he was fighting his charges, as he would have to admit guilt. (*Id.*). Pagan contends that the real reason Kelly denied him access to the sex offender program was in retaliation for him filing grievances. (*Id.*).

Based on these allegations, Pagan asserts claims against Kelly, a Unit Manager at SCI Houtzdale, and David Close, the Warden of the institution. He claims that Kelly's denial of his programming was "excessive punishment" and violated his due process rights. (Doc. 16 at 3). He further alleges that Kelly retaliated against him for filing grievances. (*Id.* at 4). Pagan also brings a claim against Warden Close, alleging that he "failed to correct" Kelly's actions. (*Id.*). He brings these claims pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.*). As relief, he requests monetary damages. (*Id.*).

3

After review, we conclude that Pagan's amended complaint fails to state constitutional claims against the defendants. Accordingly, the amended complaint should be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Complaints – Standard of Review

We have a statutory obligation to preliminarily review *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). We review such complaints to determine whether there are frivolous or malicious claims, or if the complaint fails to state a claim upon which relief may be granted. *Id.* This statutory preliminary screening mirrors review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this legal benchmark, under federal pleading standards a plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations

in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

Finally, when reviewing a *pro se* complaint, we are reminded that such complaints are to be construed liberally, "so 'as to do substantial justice.'" *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)). We must apply the relevant law even if the *pro se* plaintiff

6

does not mention it by name. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

### B. The Amended Complaint should be Dismissed.

After review, we conclude that Pagan's amended complaint fails to state a claim upon which relief can be granted and should be dismissed.

As to Pagan's claims against Defendant Kelly, he appears to be asserting claims under the First, Eighth, and Fourteenth Amendments. He claims that she denied him programming, constituting excessive punishment and a denial of his due process rights, and retaliated against him for filing grievances. First, while the Eighth Amendment protects inmates from "cruel and unusual punishment," to the extent Pagan asserts his claim under the Eighth Amendment, "[t]he failure of prison authorities to afford inmates rehabilitative programs does not constitute cruel and unusual punishment." *Milhouse v. Bledsoe*, 2011 WL 332417, at *9 (M.D. Pa. Jan. 31, 2011) (quoting *Padgett v. Stein*, 406 F. Supp. 287, 296 (M.D. Pa. 1975) (internal quotation marks omitted)). Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

7

(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, which, in the prison context, is one of "'deliberate indifference' to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted). Other than vaguely alleging that Defendant Kelly caused him "suffering and emotional distress," Pagan asserts no allegations that Kelly was deliberately indifferent to his health or safety. Accordingly, any Eighth Amendment claim fails.

Pagan's due process claim also fails. The Due Process clause provides that "[n]o state shall make or enforce any law which shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Pagan's claimed liberty interest is the chance that he could be paroled if he completes the sex offender program. But as the Supreme Court has explained, "[t]here is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Alford v. Laquise*, 604 F. App'x 93, 94 (3d Cir. 2015) (citing *Swarthout v. Cooke*,

8

562 U.S. 216, 220 (2011)) ("[T]he Due Process Clause does not establish a protected liberty interest in the expectation of release on parole."). Accordingly, Pagan's claim that Kelly violated his due process rights by denying him programming that could lead to parole fails as a matter of law. *See e.g.*, *Trieu v. Spotts*, 2024 WL 5188043, at *2 (E.D. Pa. Dec. 20, 2024) (denying prisoner's due process claim based on the alleged prevention of completing prison sex offender program).

Pagan also claims that Kelly retaliated against him for filing grievances in violation of the First Amendment. A prisoner alleging a claim of First Amendment retaliation must show (1) that he engaged in constitutionally protected conduct; (2) that he suffered an " 'adverse action' at the hands of prison officials"; and (3) that his constitutionally protected activity was "a substantial or motivating factor" in the decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted). Pagan asserts that Kelly denied him the opportunity to participate in the sex offender program because he filed grievances. But Pagan's own allegations and attached exhibits indicate that he refused the program because he was asserting his innocence in the underlying state charges. (*See* Doc. 16 at 2; Doc. 16-1 at 7). Indeed, the

9

initial review response to one of Pagan's grievances indicates that Kelly spoke to Pagan about the program, but that as of the date of the response, June 11, 2025, he "w[as] still refusing all programs." (Doc. 16-1 at 7). Accordingly, the complaint fails to allege the requisite causal connection for Pagan's retaliation claim—that Kelly denied him programming because he filed grievances. Rather, from Pagan's own allegations, it appears that he was offered the programming but refused. Accordingly, we conclude the amended complaint is insufficient to state a claim for First Amendment retaliation against Kelly.

Finally, Pagan appears to assert a claim for supervisory liability against Warden Close, alleging that he "failed to correct the illegal action from Defendant Kelly" and therefore, violated Pagan's due process rights. (Doc. 16 at 4). First, and fundamentally, a plaintiff may not bring a Section 1983 claim based solely on the theory of *respondeat superior*; rather, he must allege the defendant's personal involvement in the alleged constitutional violations. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Second, to state a claim for supervisory liability in this context, Pagan must allege that Close's conduct was either the "moving force [behind] the constitutional violation" or amounted to

"deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, we have already concluded that Pagan has failed to allege that Kelly violated his constitutional rights. But additionally, the amended complaint is devoid of any allegations from which we can infer that Close knew of Kelly's alleged unconstitutional conduct and exhibited deliberate indifference to Pagan's rights. Rather, it appears that Pagan is attempting to hold Warden Close liable on a theory of *respondeat superior*, which he may not do. Accordingly, the amended complaint fails to state a claim against Close.

Finally, while we recognize that *pro se* plaintiffs should generally be permitted to amend their complaints, *see Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), this complaint is materially flawed and thus, we believe leave to amend would be futile. Accordingly, we recommend that this complaint be dismissed with prejudice.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint be DISMISSED WITH PREJUDICE.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or

recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of July 2025.

>*s/ Daryl F. Bloom*
>Daryl F. Bloom
>Chief United States Magistrate Judge